UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
MARTIAL AMILCAR,

                    Plaintiff,

   against

THE CITY OF NEW YORK, DETECTIVE
ERIN PIGNATELLI, DETECTIVE DAVIDA
WELCH, CAPTAIN NOEMA IOFFE
and JOHN/JANE DOE 1-10 (the names being fictitious
as their identities are unknown),

                    Defendants.
------------------------------------------------------------------- x

Dkt No.22-CV-1000

**COMPLAINT**

Jury Trial Demanded

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of Plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

3. The Jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

5. Plaintiff demands a trial by jury in this action.

## PARTIES

6. Plaintiff Martial Amilcar ("Mr. Amilcar" or "Plaintiff") is an African American male resident of KINGS County in the City and State of New York.

7. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named Defendants herein.

8. Detective Erin Pignatelli, shield number 5677 ("Defendant Pignatelli"), at all times relevant herein, was a detective, employee and agent of the NYPD. Defendant Pignatelli is sued in her individual and official capacities.

9. Detective Davida Welch, ("Defendant Welch"), at all times relevant herein, was a detective, employee and agent of the NYPD. Defendant Welch is sued in her individual and official capacities.

10. Captain Noema Ioffe ("Defendant Ioffe"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Ioffe is sued in her individual and official capacities.

11. At all times relevant Defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the NYPD. Plaintiff does not know the real names and shield numbers of Defendants John and Jane Doe 1 through 10.

12. At all times relevant herein, Defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York and the NYPD. Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

13. At all times relevant herein, all individual Defendants (collectively "Defendants") were acting under color of state law.

## STATEMENT OF FACTS

14. On February 22, 2019, at approximately 3:30 p.m., Mr. Amilcar was stabbed in his right leg.

15. Thereafter, Mr. Amilcar limped home and went inside his apartment building located at 1086 Ocean Avenue, Brooklyn, New York.

16. The building had video surveillance cameras.

17. Video surveillance from that day shows Mr. Amilcar entering the building at approximately 3:45 p.m. with a noticeable limp.

18. On that same day, at approximately 5:44 p.m. a 15-year-old individual was shot and killed in the vicinity of 1395 Flatbush Avenue in Brooklyn, New York.

19. Mr. Amilcar was at home approximately half a mile away at the time of the shooting.

20. Video surveillance of the murder clearly shows two suspects running away physically unimpeded, neither of them displaying any type of limp or visible physical impairment.

21. The surveillance footage clearly showed Mr. Amilcar walking with a noticeable limp into his home hours earlier.

22. Moreover, at no time between 3:45 pm and 5:44 p.m. does surveillance footage show Mr. Amilcar leaving his home.

23. The surveillance footage was retrieved by the police prior to Mr. Amilcar's arrest.

24. On March 4, 2019, Captain Noema Ioffe approved a request for media attention with the statement that "Mr. Amilcar entered 1395 Flatbush Avenue in Brooklyn and discharged a firearm at a 15-year-old victim causing his death."

25. Captain Ioffe's statement did not say that Mr. Amilcar was accused of causing the 15-year-old's death or alleged to have caused it, but that "he had caused his death."

26. Multiple news outlets ran stories stating as fact that Mr. Amilcar had shot and killed a 15-year-old based upon the news release from the NYPD.

27. For example, on March 5, 2019, the New York Times published a story, which stated that "the police said that on Feb. 22 Mr. Amilcar showed up in the lobby of the Joseph family's apartment building and shot Mr. Joseph in the face, head and chest."

28. On March 4, 2019, at approximately 7:36 p.m. Defendant Nunez and other NYPD officers falsely arrested Plaintiff in Queens County, State of New York.

29. At that time, Plaintiff was walking with a noticeable limp and had committed no crimes.

30. Defendant John Doe 1 grabbed Plaintiff and violently threw him to the ground.

31. As Plaintiff's leg was still badly injured, being thrown to the pavement sidewalk was incredibly painful.

32. Defendant John Doe 1 had his knee on Plaintiff's back, pinning him to the ground.

33. Plaintiff told him that he was not resisting arrest, that he couldn't walk and that he should just be taken to the precinct.

34. Even though Plaintiff was not resisting, was injured, and could not run away, Defendant John/Jane Does 1-10 picked Plaintiff off the ground and threw him into a metal gate so forcefully that it knocked bricks off of the wall and tore Plaintiff's jacket and damaged his clothing.

35. As the Defendant John/Jane Does 1-10 were manhandling Plaintiff, they were laughing and telling him that Plaintiff would have to pay for the damaged bricks.

36. Defendants transported Plaintiff back to the 70th Precinct in Kings County, New York.

37. At the 70th Precinct, Defendants Pignatelli and Welch questioned Plaintiff for several hours about his involvement in the shooting.

38. Neither during Plaintiff's interrogation, nor before it, did the Defendants permit Plaintiff to eat.

39. Plaintiff maintained his innocence and told Defendants that he had an alibi since he was at home being treated for his injury.

40. Plaintiff told Defendants that his leg had been so badly wounded that he could not possibly have run away as they described.

41. Plaintiff even showed Defendants his stab wound to convince them of his innocence.

42. Defendant officers possessed the surveillance footage at the time of Mr. Amilcar's arrest and interrogation.

43. Defendant officers either failed to review the video surveillance footage with reckless disregard for Mr. Amilcar's constitutional rights or purposely ignored its contents.

44. At his subsequent arraignment, bail was denied and Mr. Amilcar was remanded into the custody of the New York City Department of Correction.

45. Upon information and belief, Defendants did not tell the grand jury that Plaintiff had been stabbed hours earlier and was walking with a noticeable limp.

46. During his incarceration, Mr. Amilcar's criminal defense attorney provided Defendants with photographs and video evidence containing meta-data establishing his alibi at the time of the shooting.

47. Despite proof that Mr. Amilcar was home at the time of the shooting, Defendants continued to prosecute him, keeping him jailed for approximately nine (9) months on Rikers Island.

48. Mr. Amilcar's experiences on Rikers Island were horrific and included being attacked by other inmates and being sprayed by chemical agents by Correction Officers for no reason.

49. After approximately nine (9) months, bail was finally set and Mr. Amilcar was able to make bail.

50. However, despite continuously pleading his innocence, Mr. Amilcar remained on house arrest for approximately two (2) more years.

51. Throughout those two (2) years, Mr. Amilcar was required to wear an ankle bracelet which was tight and painful.

52. Mr. Amilcar required medical treatment for an unrelated injury and was unable to have MRI'S performed because he was unable to remove the ankle bracelet.

53. Mr. Amilcar could not obtain permission from the Court to remove the ankle bracelet.

54. By requiring Mr. Amilcar to wear the ankle bracelet, he suffered additional pain and was delayed in getting proper medical treatment.

55. Mr. Amilcar suffered great harm to his reputation as people in his community had knowledge of the news reports falsely accusing him of murdering a 15-year-old child.

56. All charges were favorably dismissed against Mr. Amilcar on November 5, 2021.

57. As a result of the foregoing, Mr. Amilcar has suffered physical and emotional injuries including but not limited to depression, fear, embarrassment, humiliation, emotional distress, frustration, anxiety, post-traumatic stress and loss of his liberty.

58. Within ninety (90) days following the occurrence of the incidence complained of in this Complaint, Plaintiff filed a written Notice of Claim with Defendant City of New York pursuant to General Municipal Law 50-e.

59. Thirty (30) days since the filing thereof have elapsed without adjustment or payment of Plaintiff's claim.

## FIRST CLAIM
### False Arrest

60. Plaintiff repeats and realleges each and every allegation allegation as if fully set forth herein.

61. The Individual Defendants violated the Fourth and Fourteenth Amendments because they arrested Plaintiff without probable cause.

62. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein before alleged.

## SECOND CLAIM
### Malicious Prosecution

63. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

64. By their conduct, as described herein, and acting under color of state law, Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for violation of his constitutional right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

65. Defendants maliciously commenced a criminal proceeding against Plaintiff, charging him with murder and other charges.

66. Defendants' unlawful actions were willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of his constitutional rights.

67. The prosecution by Defendants of Plaintiff constituted malicious prosecution in that they commenced the criminal proceeding against the Plaintiff without any basis.

68. The prosecution by Defendants of Plaintiff constituted malicious prosecution in that they continued with the criminal prosecution against the Plaintiff without any basis.

69. The criminal prosecution was terminated in Plaintiff's favor.

70. As a direct and proximate result of the misconduct and abuse of authority stated above, Plaintiff sustained the damages alleged herein.

### THIRD CLAIM
### Denial of the Right to a Fair Trial

71. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

72. The individual Defendants withheld material exculpatory evidence from prosecutors, fabricated and altered evidence related to the acts and statements of Mr. Amilcar as a perpetrator and forwarded false evidence to prosecutors in the Kings County District Attorney's office.

73. In creating false evidence against Plaintiff, and in forwarding false information to prosecutors, the individual Defendants violated Plaintiff's right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

74. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### FOURTH CLAIM
### Retaliatory Prosecution

75. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

76. Plaintiff did not identify the actual shooter because he was not present at the shooting and did not see the shooting.

77. In retaliation for not naming the actual shooter, Plaintiff was arrested and prosecuted without any legal justification or probable cause.

78. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM
### Excessive Force

79. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

80. Defendants have deprived Plaintiff of his civil, constitutional and statutory rights under color of law and are liable to Plaintiff under 42 USC 1983.

81. Defendants have deprived Plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, in that Defendants used excessive and unreasonable force in effecting the arrest of Plaintiff.

82. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CLAIM
### Failure to Intervene

83. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

84. Those Individual Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

85. Accordingly, the Individual Defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

86. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CLAIM
### State Law Malicious Prosecution

87. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

88. Defendants maliciously commenced a criminal proceeding against Plaintiff, charging him with murder and other charges.

89. Defendants falsely and without probable cause charged Plaintiff with violations of the laws of the State of New York.

90. The commencement and continuation of the criminal proceedings against Plaintiff was malicious and without probable cause.

91. All charges were terminated in Plaintiff's favor.

92. Defendants, their officers, agents, servants and employees were responsible for the malicious prosecution of Plaintiff. Defendant City of New York, as an employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

(a) Compensatory damages against all Defendants, jointly and severally;

(b) Punitive damages against the Individual Defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: February 24, 2022
New York, New York

BRUSTEIN LAW, PLLC

_____/s/_____

Evan Brustein
299 Broadway, 17th Floor
New York, NY 10007
(212) 233-3900

CONDE LAW FIRM, PLLC.

_____**/s/**_____

Marion Conde da Silveira

299 Broadway, 17th Floor
New York, New York 10007
(917)470-2837
*Attorneys for Plaintiff*